IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAVIER RODRIGUEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil No. 3:18-CV-00088-E |
| v. | § | |
| | § | |
| TARLAND, LLC, THOMAS MCGILL, | § | |
| and TARA RUBSAMEN, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Tara Rubsamen's Motion for Summary Judgment with brief and appendix in support (Docs. 48-50), as well as Plaintiff Javier Rodriguez's Response, and Rubsamen's Reply. Rubsamen contends she is entitled to judgment as a matter of law on Plaintiff's claims against her because she cannot be considered an employer under the Fair Labor Standards Act (FLSA). After considering the pleadings, summary judgment evidence, and applicable law, the Court grants Rubsamen's Motion for Summary Judgment.

Plaintiff brings this FLSA action individually, and on behalf of all others similarly situated, against Rubsamen and two other Defendants—Thomas McGill and Tarland, LLC. In his live pleading, Plaintiff alleges that he was employed by the three Defendants to work at Sol Irlandes Mexican restaurant in Dallas. Plaintiff alleges he worked at the restaurant from August 2006 to

1

January 2018. He worked in various capacities, including dish washer, kitchen prepper, and maintenance, and worked an average of 45 hours per week. He asserts claims for overtime wage violations.

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014). Thus, among other things, an employee bringing an action for unpaid overtime compensation under the FLSA must demonstrate the existence of an employer/employee relationship during the relevant time period. *Johnson*, 758 F.3d at 630. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

Rubsamen has moved for summary judgment on grounds that she is not Plaintiff's employer under the FLSA. To be entitled to summary judgment, a party must show there is no genuine dispute as to any material fact and she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of informing the court of the basis for her motion and identifying the portions of the record that she believes demonstrate the absence of a genuine issue of material fact. *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 81 (5th Cir. 1995). If the

movant meets her burden, the burden shifts to the nonmovant to establish the existence of a genuine issue for trial. *Id.* In ruling on the summary judgment motion, this Court reviews the evidence and the inferences to be drawn therefrom in the light most favorable to the nonmovant. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994).

To evaluate whether there is an employer/employee relationship, the Fifth Circuit uses the "economic reality" test. *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). Under this test, the Court considers whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Id.* at 355. Each element need not be present in every case. *Id.* at 357. In cases where there may be more than one employer, the Court must apply the test to each individual or entity alleged to be an employer and each must satisfy the four-part test. *Id.* at 355.

Rubsamen contends that none of the four factors of the economic reality test weigh in favor of her being Plaintiff's employer. Her summary judgment evidence consists of her affidavit and Plaintiff's deposition. According to her affidavit, Rubsamen was an investor and member of Tarland, the limited liability company that owned and operated Sol Irlandes. Tarland was the employer of all employees at Sol Irlandes. Defendant McGill was also a member of Tarland, and he managed the day-to-day operations of the

3

restaurant. Rubsamen states that McGill, as restaurant manager, made all hiring and firing decisions, supervised and controlled all employees and their work schedules, determined the employees' rate and method of payment, and maintained employment records. Rubsamen states that she was not involved in the day-to-day operations of Sol Irlandes. She occasionally ate at the restaurant and sporadically provided new floral arrangements for the restaurant. At no time was she employed by Sol Irlandes. Further, Rubsamen testified that she did not hire Plaintiff, supervise his work, determine the rate and method of payment of his wages, sign his paycheck, or maintain his employment records. Nor did she do this for any employees of the restaurant.

In his deposition, Plaintiff testified that he worked for the restaurant for ten years. Plaintiff testified that McGill and Rubsamen were the owners of the restaurant; Plaintiff believed they were husband and wife. The kitchen managers, Juan Carlos Pantoja and Ricky Mendoza, generally hired employees. Plaintiff was hired by Pantoja. Plaintiff testified that Pantoja and Mendoza were his supervisors, but they took their direction from McGill. Plaintiff requested raises in his hourly wage from Pantoja and Mendoza. Pantoja and Mendoza went to McGill for approval of increases in Plaintiff's pay. McGill gave Plaintiff his paychecks. Plaintiff quit working at the restaurant because McGill promised to pay him money owed for overtime, but never did.

4

Plaintiff saw Rubsamen many times at the restaurant. She was not at the restaurant as frequently as McGill. She "would just show up to, you know, look around and see if everything was going well." Most of the time she spoke to the kitchen managers. Sometimes she changed the floral arrangements. When asked if she did additional things at the restaurant besides floral arrangements, Plaintiff answered "no." Plaintiff testified that Rubsamen never directed or supervised his work or hours of employment. McGill supervised his work. Plaintiff did not know whether Rubsamen had any input on hiring employees for the restaurant.

In his summary judgment response, Plaintiff asserts there are genuine issues of material fact regarding whether Rubsamen's involvement in Tarland's operations was sufficient to make her an employer. Plaintiff relies on his deposition, as well as Rubsamen's deposition and records from the Texas Secretary of State for Tarland and for another restaurant Rubsamen was involved in.

In her deposition, Rubsamen testified that she has a BBA in finance, marketing, and real estate and started to pursue a master's degree in business. She worked as a stockbroker in the past. She met McGill in about 2000. They have a child together, and McGill lived with Rubsamen for a period of time. She and McGill started Tarland in about 2007. She invested $500,000 in Tarland. Rubsamen testified that she visited Sol Irlandes about once a quarter to check in.

To show there are fact issues, Plaintiff cites the following evidence: Rubsamen came to the restaurant many times and visited the kitchen managers. The kitchen managers were in charge of Plaintiff's hourly wage. Plaintiff knew Rubsamen. Rubsamen owned the restaurant. She and McGill started Tarland and were its only members. She invested $500,000 in Tarland and received distributions from Tarland. She and McGill are married and have a child. Rubsamen is the manager of a different restaurant in McKinney, Texas. Rubsamen visited Sol Irlandes once per quarter to see how things were operating.

Rubsamen relies on *Gray v. Powers* to support her position. In that FLSA case, Gray, a bartender and later a general manager at a nightclub, sued the LLC that ran the club, as well as Powers, a member of the LLC. *Gray*, 673 F.3d at 353. Powers invested $100,000 and supervised a remodel job of the club. After construction was complete, Powers was not involved in day-to-day operations of the club. *Id*. Powers and other members of the LLC collectively hired and terminated the general manager. *Id.* at 355. Powers visited the club five or six times over the seventeen months it was open. *Id.* at 353. Like Rubsamen, Powers denied supervising any employee, controlling work schedules, or maintaining employee records. *Id*. Powers was a signatory on the LLC's checking account and occasionally signed pre-printed checks. *Id.* at 353–54. Other members were "much more involved in the operation of the club." *Id.* at 354. Gray admitted in a deposition that Powers was not involved

6

in the club's day-to-day operations. *Id.* While visiting the club socially, Powers did tell Gray once he was doing a "great job" and twice asked Gray to serve specific people. *Id.* at 354, 356. Gray could not remember any other occasion when Powers directed his work. *Id.* at 354.

The Fifth Circuit analyzed the case using the economic reality test. In analyzing the first factor, the power to hire and fire employees, it determined that Powers's participation in joint decisions to hire and fire general managers was not evidence he had individual authority to control the employment terms of lower-level employees. *Id.* at 355. Further such authority could not be inferred from Powers's position as a member and officer of the LLC. *Id.* Employer status may be appropriate where operational control coincides with one's position as a shareholder, officer, or owner. *Id.* As for the second factor, supervision or control of employee work schedules or conditions of employment, the appellate court determined that the isolated events—Powers once told Gray he was doing a "great job" and twice asked Gray to serve specific people—were "too paltry" to support an inference of control. *Id.* at 356–57. And evidence that Powers occasionally signed checks for the club did not indicate he determined employees' pay rates or method of payment, the third factor. *Id.* at 357. Finally, there was no evidence that Powers maintained employment records. *Id.* After applying the economic reality test, the Fifth Circuit upheld the district court's conclusion that no reasonable jury could have found Powers to be an employer. *Id.*

7

Plaintiff attempts to distinguish *Gray*. He argues that Powers only visited the club five or six times, whereas Rubsamen, a "sophisticated businesswoman," visited the restaurant quarterly during the eleven years it was in business, which amounts to more than forty times. During the visits, Rubsamen met with Plaintiff's direct supervisors, the kitchen managers who controlled his pay and working conditions. Plaintiff argues Rubsamen was acting directly or indirectly in the interest of McGill and Tarland. In addition, Plaintiff asserts she had control of Tarland as an owner and investor.

Plaintiff's summary judgment evidence is even less compelling than that of the plaintiff in *Gray*. And Plaintiff does not successfully distinguish *Gray*. The Court sees little distinction between vising a club five or six times over seventeen months and visiting a restaurant quarterly for eleven years. Rubsamen established that none of the economic-reality-test factors weigh in favor of her being considered Plaintiff's employer, and Plaintiff has failed to raise a fact issue. Rubsamen states she did not have power to hire and fire employees. Plaintiff did not contradict this; he merely stated he did not know whether she had input into hiring and firing. Rubsamen and Plaintiff both testified that Rubsamen did not supervise Plaintiff's work. Evidence Rubsamen spoke to the kitchen managers, who had supervisory authority over Plaintiff, about unknown topics when she visited the restaurant is no more than a scintilla of evidence. Next, the evidence shows McGill approved increases in Plaintiff's pay rate upon request from the kitchen managers.

There is no evidence to create a fact issue about whether Rubsamen determined Plaintiff's rate or method of payment. Finally, there is no evidence that Rubsamen maintained any employment records. Rubsamen's status as a member and investor of Tarland, without any evidence of operational control, is not evidence Rubsamen was Plaintiff's employer. As in *Gray*, Rubsamen was simply not sufficiently involved in the operation of the restaurant to be an employer under the FLSA. *See id.* at 357.

Defendant Rubsamen's motion for summary judgment is **GRANTED**.

**SO ORDERED**.

Signed December 6, 2019.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE